1  Mark R. Thierman, Nev. Bar No. 8285
   mark@thiermanbuck.com
2  Joshua D. Buck, Nev. Bar No. 12187
   josh@thiermanbuck.com
3  Leah L. Jones, Nev. Bar No. 13161
   leah@thiermanbuck.com
4  **THIERMAN BUCK, LLP**
   7287 Lakeside Drive
5  Reno, Nevada  89511
   Tel: (775) 284-1500
6  Fax: (775) 703-5027

7  Christian Gabroy, Bar No. 8805
   christian@gabroy.com
8  Kaine Messer, Bar No. 14240
   kmesser@gabroy.com
9  **GABROY LAW OFFICES**
10 170 S. Green Valley Pkwy., Ste. 280
   Henderson, Nevada 89012
11 Tel: (702) 259-7777
   Fax: (702) 259-7704
12
13 *Attorneys for Plaintiffs*

14 Joshua A. Sliker, Bar No. 12493
   joshua.sliker@jacksonlewis.com
15 **JACKSON LEWIS P.C.**
   3800 Howard Hughes Pkwy., Ste 600
16 Las Vegas, Nevada 89169
   Tel:  (702) 921-2460
17 Fax: (702) 921-2461

18 *Attorneys for Defendants*

19                **UNITED STATES DISTRICT COURT**

20                     **DISTRICT OF NEVADA**

21 | JENNIFER ZIMMERMAN, on behalf of herself | Case No.: 2:18-cv-01460-JAD-CWH |
22 | and all other similarly situation, | |
23 | Plaintiff, | |
24 | vs. | **JOINT MOTION FOR PRELIMINARY** |
25 | BUDDHA ENTERTAINMENT, LLC d/b/a and | **APPROVAL OF CLASS ACTION** |
   | a/k/a TAO GROUP also d/b/a and a/k/a TAO | **SETTLEMENT ON AN ORDER** |
26 | NIGHTCLUB also d/b/a and a/k/a TAO LV | **SHORTENING TIME** |
   | NIGHTCLUB; ASIA LAS VEGAS, LLC, d/b/a | |
27 | and a/k/a TAO ASIAN BISTRO; STRIP VIEW | |
   | ENTERTAINMENT, LLC d/b/a and a/k/a TAO | |
28 | GROUP; DOES 1 through 50, inclusive, | |
   | Defendants. | |

1   Plaintiff JENNIFER ZIMMERMAN, by and through her attorneys of record, and
2   Defendants BUDDHA ENTERTAINMENT, LLC d/b/a and a/k/a Tao Group also d/b/a and a/k/a
3   Tao Nightclub also d/b/a and a/k/a Tao LV Nightclub ("Buddha Entertainment"); ASIA LAS
4   VEGAS, LLC, d/b/a and a/k/a Tao Asian Bistro ("Asia Las Vegas"); and STRIP VIEW
5   ENTERTAINMENT, LLC d/b/a and a/k/a Tao Group also d/b/a and a/k/a Lavo Las Vegas
6   ("Lavo") (collectively, "Defendants"), (Plaintiff and Defendants are collectively referred to
7   throughout this Joint Motion as "the Parties"), hereby submit this Joint Motion for Preliminary
8   Approval of Class Action Settlement.  Pursuant to Rule 23(e) of the Federal Rules of Civil
9   Procedure ("FRCP"), the Parties seeks this Court's preliminary approval of the Parties' "Joint
10  Stipulation of Settlement and Release Between Plaintiffs and Defendant" (hereinafter referred to
11  as the "Settlement"), a copy of which is submitted for this Court's review concurrently herewith.
12  

13  Date:  March 12, 2019                    THIERMAN BUCK LLP
14  
15                                           /s/ Joshua D. Buck
                                             Mark R. Thierman (Nev. Bar No. 8285)
16                                           Joshua D. Buck (Nev. Bar No. 12187)

17                                           *Counsel for Plaintiff*

18  

19  Date:  March 12, 2019                    JACKSON LEWIS P.C.
20  
21                                           /s/ Joshua A. Sliker
                                             Joshua A. Sliker (Nev. Bar No. 12493)
22  
23                                           *Counsel for Defendants*

24  
25  
26  
27  
28  

2

**<u>DECLARATION OF JOSHUA D. BUCK IN SUPPORT OF REQUEST TO CONSIDER PARTIES' JOINT MOTION ON AN ORDER SHORTENING TIME</u>**

I, JOSHUA D. BUCK, declare as follows:

1.     I am an attorney duly licensed to practice law in the State of Nevada and admitted to the United States District Court for the District of Nevada, and in that capacity, I am counsel for Plaintiff and the putative Class in the above-entitled action.

2.     I have personal knowledge of the events as described in this Joint Motion and the information set forth herein is true and correct to the best of my knowledge.

3.     The Parties are jointly requesting that this Motion be heard on an Order Shortening Time in an effort to expedite resolving this matter.

4.     In an effort to expedite the settlement process and begin notifying the potential Class Members of this suit and their right to participate and receive settlement funds, the Parties agree that an Order Shortening Time is appropriate.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 12th day of March, 2019.

/s/ Joshua D. Buck
JOSHUA D. BUCK

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ORDER SHORTENING TIME**

TO:     ALL INTERESTED PARTIES; and

TO:     THEIR ATTORNEYS OF RECORD

　　　For good cause appearing therefore, it is hereby ORDERED that the time for the hearing on the Parties' **JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT ON AN ORDER SHORTENING TIME** is hereby shortened to the ___ day of _____, 2019 at the hour of _____, in the Lloyd D. George United States Courthouse.

_____
UNITED STATES DISTRICT JUDGE

Submitted by:
/s/ Joshua D. Buck
Mark R. Thierman, Nev. Bar No. 8285
mark@thiermanbuck.com
Joshua D. Buck, Nev. Bar No. 12187
josh@thiermanbuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, Nevada 89511
Tel. (775) 284-1500
Fax. (775) 703-5027

*Attorneys for Plaintiff*

1

I.      PROCEDURAL HISTORY AND FACTUAL BACKGROUND.

2

3          On July 11, 2018, Plaintiff filed a Class Action Complaint with the Eighth Judicial

4   District Court, Clark County, Nevada, and named On November 5, 2014, Plaintiffs filed a Class

5   Action Complaint with the Court and named Buddha Entertainment, LLC d/b/a and a/k/a Tao

6   Group also d/b/a and a/k/a Tao Nightclub also d/b/a and a/k/a Tao LV Nightclub; Asia Las

7   Vegas, LLC, d/b/a and a/k/a Tao Asian Bistro; and Strip View Entertainment, LLC d/b/a and

8   a/k/a Tao Group also d/b/a and a/k/a Lavo Las Vegas as defendants.  Plaintiff alleged four causes

9   of action including: (1) Failure to Pay Minimum Wages in Violation of the Nevada Constitution

10  Art. XV, Sec. 16; (2) Failure to Pay Overtime in Violation of NRS 608.018 and 608.140; and (3)

11  Failure to Timely Pay All Wages Due and Owing in Violation of NRS 608.020-050 and

12  608.140; and (4) Injunctive Relief.  Defendant filed a Petition of Removal to Federal Court on

13  August 7, 2018.  ECF No. 1.  On September 12, 2018, the Parties stipulated to stay the case in its

14  entirety for 90 days so that they could engage in mediation.  ECF No. 10.  The Parties submitted

15  a second stipulation to stay the case pending mediation on December 12, 2018 due to the

16  unavailability of their chosen mediator.  ECF No. 12.

17         The Parties engaged in extensive discussions regarding their respective positions, and the

18  information and data needed to properly evaluate the merits of the claims alleged.  The parties

19  also engaged in informal discovery.  Defendants' counsel provided Plaintiff's counsel with class

20  member payroll data, and information concerning Defendants' health insurance plans and costs.

21  Thereafter, the Parties retained the services of Hon. Phillip M. Pro (Ret.) to conduct a mediation

22  and provide a frank assessment of each Party's case.  Following extensive discussions regarding

23  the strengths and weaknesses of their respective positions, the Parties reached a proposed class

24  action settlement through arms-length direct negotiations.   Joint Stipulation of Settlement,

25  **Exhibit 1**.

26

II.     SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS.

27

28         The Parties' Settlement provides for significant monetary recovery on behalf of the

Class, releases only those claims alleged or related to the complaint, and sets forth the legally

1  appropriate mechanism for providing notice to the Class of the terms and conditions of the

2  Settlement.

3      **A.    The Recovery.**

4      The Settlement provides for a maximum settlement amount of $500,000.00.  Settlement,

5  at ¶ 12(c).  Out of that amount, the following approximate breakdown applies:

6      • $310,833.33[1] in estimated settlement funds to the Class;

7      • $12,500 in settlement administration costs;

8      • $5,000 in enhancements to Plaintiff for her participation in the lawsuit;

9      • $166,666.67 attorney's fees (33 1/3 percent of the maximum settlement amount);

10        and

11      • Up to $5,000 in actual costs for Plaintiff's Counsel.

12  *Id.* at ¶ 12(c); ¶ 12(g); and ¶ 14.  The employees' share of payroll taxes will be deducted from

13  the wage payments made to the Settlement Class.  *Id.* at ¶ 12(c).  The remainder of the maximum

14  settlement amount (the amount remaining after deduction of the settlement administration costs,

15  Enhancement Award, Attorneys Fees, Costs, and payroll taxes) ("net settlement amount") will

16  paid to Class Members who submit a timely Claim Form based on the formula established in

17  Paragraph 12(d) of the Settlement.  *Id.* at ¶¶ 12(c)-(d).  Class Members who do not submit a

18  Claim Form will not be paid a Settlement Award.  Any sums not payable from the Net

19  Settlement Amount shall not be payable by Defendant.  *Id.* at ¶ 12(d).

20      The settlement represents a significant recovery on behalf of the Class given the risks

21  associated with this case.  Plaintiff alleged that was not paid the correct minimum wage of $8.25

22  per hour for each hour worked between July 11, 2016 up through the present.  Plaintiff further

23  alleged that she was not paid the correct overtime wage of at least $12.38 per hour for each hour

24  worked between July 11, 2016 up through the present.  Defendants challenged the Plaintiff's

25  institution of a putative class action given that every potential class member signed an arbitration

26

27

28

---

[1]    The net settlement amount (defined below) is subject to change, and may increase or decrease depending on the actual settlement administration costs and costs awarded to Class Counsel.

6

agreement with a class action waiver. Defendants also contend that their health insurance coverage offered to its employees entitled it to pay employees the lower tier minimum wage of $7.25 per hour under Nevada's Minimum Wage Amendment to the Nevada Constitution. Defendants contend that a number of employees were paid $7.25 per hour and that Defendants were likely qualified to pay at least half of those employees the lower tier minimum wage based on the cost of its health insurance offerings in proportion to the employee's annual earnings (without including tips). Defendants contend that even if the Class could prove that they were incorrectly paid the lower-tier minimum wage (which Defendants vigorously dispute), which may have resulted in incorrect hourly payments for overtime worked, the total potential monetary amount the class could hope to recover would be approximately just in excess of $271,000. Thus, the total settlement amount represents significant value for the Class Members when comparing what they could have expected to recover if the Class was able to achieve a complete victory on the merits of the claims.

### B.    The Release.

Defendants deny liability under any of Plaintiff's claims. Settlement, at ¶ 6. The Settlement provides that, in consideration for the Settlement, Settlement Class Members[2] who do not file valid requests for exclusion will release all wage and hour claims relating or arising out of the facts of Plaintiff's complaint against Defendants pursuant to the terms of the Settlement.[3] *Id.* at ¶ 21.

### C.    The Settlement Mechanism.

The Parties have agreed to use a third-party Claims Administrator to administer the claims process. *Id.* at ¶ 14. The Settlement provides for the Claims Administrator to send out notice explaining the terms and conditions of the Settlement to approximately 285 class

---

[2]      "Settlement Class" means all persons who have previously been or currently are employed by one or more of the Defendants, in the State of Nevada, as an hourly-paid employee, and who were paid less than $8.25 per non-overtime hour worked and/or less than $12.38 per overtime hour worked, at any time during the Class Period.

[3]      "Released Claims" has the meaning ascribed to it in ¶ 1(s) of the Settlement Agreement.

7

members.  *Id.* at ¶ 1(p); and ¶ 16.  (A copy of the Notice to be approved by the Court and sent to class members is attached as Exhibit A to the Settlement. The Claim Form and Exclusion Form are attached as Exhibits B and C to the Settlement.) Following mailing of the Notice, class members then have thirty (30) days to submit a claim form and participate in the Settlement, request to be excluded from the Settlement, or object to the Settlement.  *Id.* ¶¶ 16-20.

The Settlement further provides that following the notice period the Court will hold a final "fairness" hearing to provide final review and approval of the Settlement.  *Id.* at ¶ 23(a). The Notice advises class members about the fairness hearing and their opportunity to attend the hearing and make their views known.  *Id.* at ¶ 20.  At the fairness hearing, the parties will address any issues raised by class members or the notice process itself, and the Court will have a second opportunity to review the settlement in full.

## III.    THE LEGAL FRAMEWORK WEIGHS IN FAVOR OF GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT.

FRCP 23(e) provides that settlement of the claims of a certified class is subject to the court's approval.  In general, settlement of class actions is favored as a matter of "strong judicial policy." *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)).

Procedurally, the reviewing court's evaluation is conducted in two stages.  *Alberto,* 252 F.R.D. at 658. At the first stage the court conditionally certifies a class for settlement purposes, preliminarily approves the settlement pending the "fairness hearing," and authorizes notice of the proposed class settlement to be given to the class. *Id.* (citations omitted); *see also Manual for Complex Litigation (Fourth)* § 21.632 (2004) ("Manual for Complex Litigation") (summarizing "preliminary fairness review").  Stage two is the fairness hearing, set for a time after notice has been provided to the class and class members have had an opportunity to submit claims or objections to the proposed settlement or to opt out of it, and the court reaches a final determination about whether the proposed settlement should be approved as a fair, adequate, and reasonable resolution of the dispute. *Id.* at 659 (citations omitted).

1
2
3

Because this is the first stage of the Court's evaluation of the Settlement, Plaintiff submits that (A) the Class should be certified, (B) the Settlement should be preliminary deemed fair, reasonable, and adequate, and (C) notice should be sent out as set forth in the Settlement.

4

**A.**    **The Settlement Class Should Be Certified.**

5
6

To facilitate the proposed settlement, Plaintiff respectfully requests that the Court conditionally certify the following settlement Class pursuant to FRCP 23:

7
8
9
10
11

> "All persons who have previously been or currently are employed by one or more of the Defendants, in the State of Nevada, as an hourly-paid employee, and who were paid less than $8.25 per non-overtime hour worked and/or less than $12.38 per overtime hour worked, at any time since July 11, 2016 up to and including the date the Court grants preliminary approval of this Settlement."

12
13
14
15

Settlement at ¶ 1(f) and (w).  The Parties agree that, for purposes of settlement, the criteria for certifying the Class under FRCP 23(a) and FRCP 23(b)(3) may be satisfied in this case, and the proposed Class should be certified for purposes of settlement.  *See* Declaration of Joshua D. Buck ("Buck Dec.") at ¶ 7, **Exhibit 2**.

16

**1.**    **All four criteria of FRCP 23(a) are met.**

17
18
19
20
21
22

*FRCP 23(a)(1): The class is so numerous that joinder of all members is impracticable.* "As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement." *Quintero v. Mulberry Thai Silks, Inc.,* No. 08-2294, 28 I.E.R. Cas. (BNA) 607, 2008 U.S. Dist. LEXIS 84976, at *7 (N.D. Cal. Oct. 22, 2008) (citation omitted). Here, the settlement Class consists of approximately 285 individuals.  Plainly, the numerosity criterion is satisfied.

23
24
25
26
27
28

*FRCP 23(a)(2): There are questions of law or fact common to the Class.*    The commonality requirement is construed liberally.  *Alberto v. GMRI, Inc.*, 252 F.R.D. at 660 (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (Rule 23(a)(2) construed "permissively"). The class members' claims must share some substantial issues of law or fact, but need not be identical. *Quintero*, 2008 U.S. Dist. LEXIS 84976, at *8. Either "shared legal issues with divergent factual predicates" or "a common core of salient facts

coupled with disparate legal remedies within the class" satisfies this criterion. *Hanlon,* 150 F.3d at 1019.

Here, all class members are current or former non-exempt hourly paid employees who worked for Defendants from July 11, 2016 through the date the Court grants preliminary approval. Under Nevada law, all non-exempt employees are entitled to be compensation for all hours worked, minimum wages for all hour worked, and/or overtime for all hours worked over eight (8) hours in a workday (provided that they make less than 1 ½ times the minimum wage rate) and over forty (40) hours in a workweek. All non-exempt employees who involuntarily leave their employment are also entitled to be paid all their wages due and owing at the time their employment ends. Given this legal foundation, Plaintiff and class members claims share common factual and legal questions, which include, whether class members were compensated for all hours they worked at the appropriate legal rate pursuant to Nevada law and whether class members who are former employees were paid all their wages due and owing at the time of their termination. *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.,* 527 F. Supp.2d 1053, 1062-63 (N.D. Cal. 2007); *Wang v. Chinese Daily News, Inc.,* 231 F.R.D. 602,607 (C.D. Cal. 2005). Based on these common issues, this criterion is met. For purposes of approving this Settlement, Defendant does not oppose Plaintiffs' assertion that sufficient commonality exists.

**FRCP 23(a)(3): *The claims or defenses of the representative parties are typical of the claims or defenses of the class.*** Like commonality, the typicality standard is applied "permissive[ly]." *See Staton,* 327 F.3d at 957 (quoting *Hanlon,* 150 F.3d at 1020). It is satisfied if the representatives' claims are "'reasonably coextensive with those of absent class members; they need not be substantially identical.'" *Id.* Here, named-Plaintiff is a former employee of Defendants that worked as non-exempt employee and was at various times paid a minimum hourly wage of $7.25 instead of $8.25 per hour for regular time work, and an hourly wage less than $12.38 per hour of overtime worked. Named-Plaintiff asserts that she allege the same wage and hour violations as all other members of the class. Thus, her claims are typical to those of the

Class.   For purposes of approving this Settlement, Defendants does not oppose Plaintiff's assertion that sufficient typicality exists.

   ***FRCP 23(a)(4): The representative parties will fairly and adequately protect the interests of the class.***   Courts have interpreted this requirement as posing two questions: (1) whether either the named plaintiff or his counsel has any conflicts of interest with other class members, and (2) whether the named plaintiff and their counsel will vigorously prosecute the action on behalf of the class. *See id.* (citing *Hanlon* and other cases).  Here, neither Plaintiff nor her counsel have interests antagonistic to those of other class members.  On the contrary, the named Plaintiff shares with absent class members an interest in recovering compensation that Defendants allegedly denied them.  In addition, Plaintiff's counsel have extensive experience in wage and hour class actions, as well as class action litigation more generally, and the proposed settlement was reached only after arm's-length direct settlement discussions.  Buck Dec., at ¶¶ 4-5.  Thus, the named-Plaintiff and Plaintiff's counsel are adequate representatives of the Class.

     **2.  The criteria of FRCP 23(b)(3) are met.**

   To certify a class under FRCP 23(b)(3), a court must find that common questions of fact or law predominate over questions affecting only individual members of the proposed class, and that a class action is the superior method for fairly and efficiently adjudicating the controversy.  FRCP 23(b)(3).  Both criteria are met here.

   ***The predominance requirement is met***.   The predominance inquiry "focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir), *cert. denied,* 534 U.S. 973,122 S. Ct. 395 (2001) ("*Local Joint Executive Bd.*") (quoting *Hanlon,* 150 F.3d at 1022).

   As in numerous other wage and hour class actions, the fact that this litigation arises from Defendants' alleged uniform policy (which Plaintiff's allege did not properly compensate Class Members at the legal minimum wage) strongly supports a finding that the predominance

requirement is satisfied. *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.,* 527 F. Supp.2d at 1068; *In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 571 F.3d 953, 958 (C.A.9 2009).   Accordingly, Plaintiff argues that common issues of law and fact predominate, and Defendants do not oppose this argument for purposes of settlement approval.

> ***The superiority requirement is met.***   Determining whether a class action is the superior method of adjudicating a controversy involves "comparing alternative mechanisms of dispute resolution" as applied to the facts and claims. *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. at 614. Plaintiff alleges that the situation here is comparable to that of the Las Vegas Sands' former casino employees who sought damages for failure to provide a statutorily required 60-day notice before closure:

> > This case involves multiple claims, some for relatively small individual sums. Counsel for the would-be class estimated that, under the most optimistic scenario, each class members would recover about $1,330. If plaintiffs cannot proceed as a class, some - perhaps most - will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to achieve.

*Local Joint Executive Bd.,* 244 F.3d at 1163 ("Class actions … may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.") (*citing Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, (1985). In such a situation, the superiority requirement is "easily satisfied." *Id.*  Plaintiff avers that the same holds true here.  Defendants do not oppose such a finding for purposes of settlement approval.

> **B.**     **The Proposed Settlement Is Fair, Reasonable, and Adequate.**

The *Manual for Complex Litigation* § 21.62 identifies several factors that courts may weigh in determining whether a settlement is fair, reasonable, and adequate (Fed. R. Civ. P. 23(e)(2)), summarizing the inquiry as follows: Fairness calls for a comparative analysis of the treatment of class members vis-a-vis each other and vis-a-vis similar individuals with similar claims who are not in the class. Reasonableness depends on an analysis of the class allegations and claims and the responsiveness of the settlement to those claims. Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process.  *Id.,* § 21.62 at 315.

At the preliminary approval stage, courts do not make a final determination of fairness, reasonableness, and adequacy. Instead, the key question at this point is only whether the settlement is "potentially fair, as the Court will make a final determination of [the settlement's] adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Acosta v. Equifax Info. Servs. LLC,* 243 F.R.D. 377,386 (C.D. Cal. 2007). Thus, the inquiry should focus on whether the proposed settlement falls within the "range of possible approval" and appears to be sufficiently fair, reasonable, and adequate to warrant distributing notice to class members informing them about the proposed settlement and their options for responding and participating. *Molski v. Gleich,* 318 F.3d 937,944 (9th Cir. 2003); *see also Manual for Complex Litigation* § 21.632. "Once the judge is satisfied as to the ... results of the initial inquiry into the [1] fairness, [2] reasonableness and [3] adequacy of the settlement," the court should direct notice to issue and schedule a final approval hearing. Id., § 21.633 at 321. Plaintiffs aver that all three are preliminarily met as follows:

### 1. The Settlement Is Fair.

**Fairness of distribution among class members.**  The proposed settlement is fair in that class members' benefits are determined by the number of hours they worked during the class period at a regular hourly wage of less than $8.25 per hour, or less than $12.38 per hour for overtime.  Furthermore, the proposed settlement would release only participating class members' wage and hour claims, not all potential employment claims, in exchange for the financial benefits they receive.

**Fairness of proposed attorneys' fees.**  The allocation of total settlement funds between class members and the attorneys is also fair, in that the settlement agreement provides for Plaintiff's counsel to seek no more than one-third of the maximum settlement amount in fees. The requested fees are fair compensation for undertaking complex, risky, expensive, and time-consuming litigation solely on a contingency basis.  Further, the requests are in line with other attorneys' fees awards for wage and hour class actions, particularly where a significant portion of the class members will be receiving substantial claim payment amounts of several hundred dollars.  Indeed, courts have recognized that an appropriate method for awarding attorneys' fees in class action is to award a percentage of the "common fund" created as a result of the

settlement. *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of the common fund/percentage approach is to "spread litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." *Id.*

Moreover, several courts have expressed frustration with the alternative "lodestar" approach for deciding fee awards, which usually involves wading through voluminous and often indecipherable time records. Commenting on the loadstar approach, Chief Judge Marilyn Hall Patel wrote in *In re Activision Securities Litigation,* 723 F.Supp. 1373, 1375 (N.D. Cal. 1989):

> This court is compelled to ask, "Is this process necessary?" Under a cost-benefit analysis, the answer would be a resounding, "No!" Not only does the *Lindy Kerr-Johnson* analysis consume an undue amount of court time with little resulting advantage to anyone, but in fact, it may be in the detriment of the class members. They are forced to wait until the court has done a thorough, conscientious analysis of the attorneys' fees petition. Or, class members may suffer a further diminution of their fund when a special master is retained and paid from the fund. Most important, however, is the effect the process has on the litigation and the timing of settlement. Where attorneys must depend on a lodestar approach, there is little incentive to arrive at an early settlement.

Indeed, the percentage approach is preferable to the lodestar because: (1) it aligns the interests of class counsel and absent class members; (2) it encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; and (3) it reduces the demands on judicial resources. *In re Activision Securities Litigation*, 723 F. Supp. at 1378-79. Courts now routinely uses the percentage of the common fund approach to determine the award of attorneys' fees. (*See, e.g., In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378-79 (9th Cir. 1994) (approving attorneys' fees of 33 1/3% of settlement fund).

Class counsels' application for one-third of the Settlement Funds is within the range of reasonableness. Historically, courts have awarded percentage fees in the range of 20% to 50% of the common fund, depending on the circumstances of the case. *Newberg on Class Action* § 14:6 (4th ed. 2008); *see also In re Activision Securities Litigation*, 723 F.Supp. 1373, 1378 (N.D. Cal. 1989). According to *Newberg*: "No general rule can be articulated on what is a reasonable percentage of a common fund. Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate

1   part of the recovery obtained for the class, although somewhat larger percentages are not

2   unprecedented." *Newberg*, § 14:6.  Accordingly, the attorneys' fees sought in this case are fair

3   and reasonable.

4           **Fairness of proposed "enhancement" award for the named Plaintiffs**.  The principle

5   of fairness is also well served by the $5,000 enhancement payments proposed for the named

6   Plaintiff.   Plaintiff provided invaluable assistance to Plaintiff's counsel in explaining

7   Defendants' alleged compensation policies and procedures, and in providing information to

8   assist in the settlement negotiations.    Further, Plaintiff incurred personal risk in bringing this

9   lawsuit on behalf of the other persons in the class.  *See, e.g., Koehl v. Verio,* 142 Cal. App. 4th

10   1313, 1328 (2006) (in wage and hour action where defendant prevailed at trial, named plaintiffs

11   were held liable, jointly and severally, for defendant's attorneys' fees).  They could have been

12   held liable for Defendants' costs if they were ultimately unsuccessful in resolving the case and

13   their potential employment opportunities could (and can still be) impacted because of their

14   public participation in this lawsuit. Such service payments are recognized as serving an

15   important function in promoting class action settlements. In *League of Martin v. City of*

16   *Milwaukee,* 588 F. Supp. 1004 (E.D. Wis. 1984), the court held that the proposed settlement

17   properly granted the named plaintiff additional relief, explaining that it is "not uncommon for

18   class ... members to receive special treatment in settlement" when they have been instrumental in

19   prosecuting the lawsuit. *Id.* at 1024.  Accordingly, the enhancement is fair.

20           **2.**      **The Settlement Is Reasonable.**

21       At $500,000 overall, the proposed settlement is reasonable. This is not a settlement where

22   the aggregate figure is large simply because the size of the class is in the tens or hundreds of

23   thousands.  Instead, here the class size is relatively small, but Class Members are eligible for

24   financial benefit. These considerations indicate that the proposed settlement falls within the

25   range of reasonableness, warranting preliminary approval.

26       This conclusion is reinforced by considering such factors as the risk that a class might not

27   be certified or might be significantly smaller than proposed; and the time, expense, and

28   complexity of the litigation, including the possibility of appellate proceedings. Of particular

relevance to the reasonableness of the proposed settlement is the fact that there are significant

questions as to whether Defendants were liable to class members for so-called waiting time penalties under NRS 608.020-.050.  Indeed, Defendants argued that so-called waiting time penalties under NRS 608.020-50 are only recoverable when a terminated employee has not been paid her final paycheck and cannot be invoked as a derivative claim stemming from other violations of Nevada's wage and hour statutes.  Given the significant legal uncertainty relating to the waiting time penalty issue, the $500,000 settlement represents a reasonable recovery based on the alleged violations.

Furthermore, while Class Counsel believe that Plaintiff's claims are meritorious, they are experienced class action litigators, and understand that the outcome of class certification, trial, and any attendant appeals were inherently uncertain, as well as likely to consume many more months, even years.  Having reviewed relevant compensation data and employment information, counsel for the parties—all experienced class action litigators well versed in wage and hour law—arrived at a reasonable resolution through a protracted an arm's-length direct negotiation process, which continued into all details of the settlement agreement and ancillary documents.

Another factor considered in approving a settlement is the complexity, expense, and likely duration of the litigation. *Offices for Justice,* 688 F.2d at 625. The Court must weigh the benefits of the proposed settlement against the expense and delay involved in achieving an equivalent or more favorable result at trial. *See, e.g., Young v. Katz,* 447 F .2d 431,433-34 (5th Cir. 1971).  The policy that favors settlement of class actions and other complex cases applies with particular force here.  Employment cases, and specifically wage and hour cases, are expensive and time-consuming.  That this is a class action further amplifies the economies of time, effort, and expense achieved by the settlement.  Inevitably, the certification process alone would add time and expense to the litigation process. The settlement, on the other hand, provides class members substantial, prompt and efficient relief.  The settlement in this case is therefore consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits." *See Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted); *see also 4 Newberg on Class Actions* § 11.41 (citing cases).

In sum, the resulting settlement is, in light of all applicable factors, reasonable, and warrants notification of its terms to members of the potential class for their consideration and response.

### 3.    The Settlement Is Adequate.

As previously mentioned, in a somewhat similar class action the court aptly observed that it would have been irrational for most, and probably all, class members to pursue their claims on an individual basis "because of the disparity between their litigation costs and what they hope to recover." *Local Joint Executive Bd.*, 244 F.3d at 1163.

The recovery provided through the settlement is reasonable, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes . . . . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation . . . . "*Officers for Justice,* 688 F.2d at 634 (citation omitted). Accordingly, the settlement is not to be judged against a speculative measure of what might have been achieved. *Linney v. Cellular Alaska P'ship,* 151 F .3d 1234, 1242 (9th Cir. 1998). An additional consideration is that the settlement provides for payment to the class now, rather than a payment many years down the road, if ever. *See City of Detroit v. Grinnell Corp.,* 495 F .2d 448, 463 (2d Cir. 1974).

Thus, considering the present value of the settlement sum, the probability of lengthy litigation in the absence of a settlement, and the risks that the class might not have prevailed at trial, it is no exaggeration to predict that without using the class action process, the relief that members of the class were likely to achieve ranged from negligible to zero. Consequently, the $500,000 settlement satisfies the criterion of adequacy. *See Manual for Complex Litigation* § 21.62 ("Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process.").

### C.    The Notice Adequately Informs Class Members Of The Settlement.

The Notice explains the claim process; how to request to be excluded or object; and the consequences of the action the class member takes (filing a claim, doing nothing, opting out, or objecting), in terms of both financial benefit and release of state claims. The Notice advises class

members about the final approval hearing, their rights with respect to that hearing, and how to get more information.  Likewise, the claim form is simple and straightforward. The 30-day time frame for returning a claim is reasonable, allowing class members to digest the information in the notice and obtain answers to questions before deciding on the action they want to take. Accordingly, in addition to approving the Settlement agreement as a whole, Plaintiffs respectfully ask that the Court approve the Notice and other ancillary forms in substantially the format presented with the Settlement.

## IV.    CONCLUSION.

Based on the information and reasons provided above, the Parties respectfully request that the Court enter the proposed order granting preliminary approval of the class action settlement that is attached to the Settlement as Exhibit E.

Date:  March 12, 2019                    THIERMAN BUCK LLP

                                         /s/ Joshua D. Buck
                                         Mark R. Thierman (Nev. Bar No. 8285)
                                         Joshua D. Buck (Nev. Bar No. 12187)

                                         *Counsel for Plaintiff*


Date:  March 12, 2019                    JACKSON LEWIS P.C.

                                         /s/ Joshua A. Sliker
                                         Joshua A. Sliker (Nev. Bar No. 12493)

                                         *Counsel for Defendants*